**No. 25-5138**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee,*

**v.**

**BRIAN KELSEY**

*Defendant-Appellant.*

---

On Appeal from United States District Court for the Middle District of Tennessee,
No. 3:21-cr-00264-1

---

**EMERGENCY BRIEF OF THE APPELLANT BRIAN KELSEY**

---

Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
Telephone: (502) 780-6185
kent@wickerbrammell.com
*Counsel for Brian Kelsey*

## TABLE OF CONTENTS

Table of Authorities ........................................................................................ iii

Introduction ...................................................................................................... 1

Statement Regarding Oral Argument ............................................................... 3

Jurisdictional Statement .................................................................................... 3

Statement of the Issues ...................................................................................... 5

Statement of the Case ........................................................................................ 6

    1. Background ................................................................................................ 6

    2. The Indictment .......................................................................................... 7

    3. The Smith Recording and Government Misconduct .................................. 9

    4. The Change of Plea .................................................................................. 10

    5. New Evidence, the Government's Breach, Ineffective Assistance of Counsel, and the Motion for Release ........................................................................ 10

Summary of the Argument ............................................................................... 13

Argument ......................................................................................................... 15

    I.    Kelsey's § 2255 Motion Presents a Substantial Claim of Law Because Newly Discovered Evidence and Government Misconduct Call His Conviction Into Serious Question. ........................................................... 16

II.    The District Court Abused Its Discretion in Finding That Kelsey
       Failed to Establish Exceptional Circumstances Warranting Release........23

Conclusion ..................................................................................................28

Certificate of Compliance/Certificate of Service....................................................30

Record Designation.................................................................................32

## TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*Brady v. Maryland*, 373 U.S. 83 (1963) ......................................................13, 18, 19

*Bridges v. United States*, 991 F.3d 793 (7th Cir. 2021)..............................................1

*Boyer v. City of Orlando*, 402 F.2d 966 (5th Cir. 1968)........................................ 24

*Cagle v. Davis*, 520 F. Supp. 297 (E.D. Tenn. 1980)..............................................18

*Clark v. Hoffner*, 2020 WL 1703870 (E.D. Mich. Apr. 8, 2020) ...........................24

*Denney v. United States*, 2010 WL 11627531 (N.D. Ga. Feb. 5, 2010) ................24

*Dotson v. Clark*, 900 F.2d 77 (6th Cir. 1990).........................................3,15, 23, 27

*Fischer v. United States*, 603 U.S. 480 (2024) ......................................................26

*Giglio v. United States*, 405 U.S. 150 (1972) .........................................................13

*House v. Bell*, 547 U.S. 518 (2006) .......................................................................27

*Lee v. Jabe*, 989 F.2d 869 (6th Cir. 1993) .............................................................15

*Lucas v. O'Dea*, 179 F.3d 412 (6th Cir. 1999) .........................................................1

*Mahan v. Douglas*, 643 F. Supp. 3d 783 (E.D. Mich. 2022)..................................16

*McCann v. Mangialardi*, 337 F.3d 782 (7th Cir. 2003) .........................................18,

*Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*,
    117 F.4th 389 (6th Cir. 2024) .................................................................2, 26

*Opper v. United States*, 348 U.S. 84 (1954) ..........................................................18

*Robertson v. Lucas*, 753 F.3d 606 (6th Cir. 2014)..........................................1, 13,17

*Santobello v. New York*, 404 U.S. 257 (1971) ..........................................................20

*Stack v. Boyle*, 342 U.S. 1 (1951) ..............................................................................3

*Strickland v. Washington*, 466 U.S. 668 (1984) .......................................................22

*United States v. Conroy*, 567 F.3d 174 (5th Cir. 2009) ............................................18

*United States v. Kelsey*, 2024 WL 3326002 (6th Cir. July 8, 2024).........................11

*United States v. Lyons*, 2024 WL 3898550 (D.D.C. Aug. 22, 2024) ...............25, 26

*United States v. Mett*, 41 F.3d 1281 (9th Cir. 1994)........................................25, 26

*United States v. Ohri*, 133 F. App'x 555 (10th Cir. 2005) .............................. 17-18

*United States v. Roberts*, 250 F.3d 744 (5th Cir. 2001)...........................................25

*United States v. Ruiz*,  536 U.S. 622 (2002) ......................................................17, 18

*United States v. Spalla*, 762 F.2d 1011 (6th Cir. 1985).........................................27

Statutes                                                                                        Page(s)

18 U.S.C. § 3231 ..........................................................................................................3

28 U.S.C. § 1291 ..........................................................................................................3

28 U.S.C. § 2255..................................................................................................3, 14

Miscellaneous                                                                                Page(s)

Middle Dist. Of Tennessee, Local Rule 16.01.......................................................19

<u>INTRODUCTION</u>

Brian Kelsey should not remain in prison while the courts determine whether his conviction should be overturned. Newly discovered evidence casts grave doubt on his guilt. The government's key witness has now admitted that prosecutors pressured him into giving false testimony, while another government witness was caught on tape declaring his own innocence—directly undermining the government's theory of the case. Compounding these issues, prosecutors failed to disclose this exculpatory evidence before Kelsey entered his plea, raising a critical legal question that the Sixth Circuit has yet to resolve: whether Brady v. Maryland applies to guilty pleas. *See Robertson v. Lucas*, 753 F.3d 606, 621 (6th Cir. 2014). This, combined with the government's breach of the plea agreement and Kelsey's ineffective legal representation at every stage, establishes a substantial claim of law—one that, at a minimum, deserves full consideration before he serves out his entire sentence.

Indeed, "[c]ounsel's failure to raise an issue whose resolution is clearly foreshadowed by existing decisions might constitute ineffective assistance of counsel." *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999); *see also Bridges v. United States*, 991 F.3d 793, 804 (7th Cir. 2021). That principle applies squarely here. In a recent en banc decision, the Sixth Circuit held that, if presented with a

case, the Supreme Court likely would enjoin the prohibition on campaign coordination to which Mr. Kelsey pleaded guilty. *See Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, 117 F.4th 389, 393 (6th Cir. 2024) (en banc). Despite the significance of this development, Kelsey's former counsel, Bruno, provided ineffective assistance by failing to file—or even read—the motion to dismiss that was drafted to advance that argument. (*See* Kelsey Declaration, R. 201-4, PageID #: 1975, ¶ 8.) At the very least, the Sixth Circuit's recent opinion renders this a substantial claim of law, further justifying Kelsey's request for release.

Kelsey also satisfies the extraordinary circumstances prong for release. He has never been a flight risk or a danger to the community, having remained on bond without incident before trial, during his direct appeal, and even while petitioning the Supreme Court. Moreover, the brevity of his sentence heightens the injustice of denying release; without intervention, he may serve most or all of his prison term before his claims are even adjudicated, rendering any ultimate victory meaningless. Courts have long recognized that strong post-conviction claims coupled with short sentences create precisely the kind of exceptional circumstances that warrant release. Yet the District Court failed to meaningfully engage with this precedent.

By denying release, the District Court disregarded compelling evidence of innocence, ignored a fundamental constitutional question, and failed to acknowledge

2

the real-world consequences of continued incarceration while Kelsey's meritorious petition remains pending. The law does not require that a person remain imprisoned when his conviction is already unraveling. This Court should reverse.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Kelsey does not request oral argument. The legal issues will be fully presented in the briefs, and argument is unnecessary to aid the Court's resolution of this appeal.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over Mr. Kelsey's underlying criminal case under 18 U.S.C. § 3231, which grants federal courts original jurisdiction over all offenses against the laws of the United States. Following his conviction, Kelsey filed a motion for emergency release pending resolution of his motion to vacate under 28 U.S.C. § 2255, which the District Court denied. (Opinion, R. 215).

This Court has jurisdiction under 28 U.S.C. § 1291, which provides jurisdiction over final decisions of the district courts. The Supreme Court has recognized that a denial of bail pending the resolution of a habeas petition is an appealable order. *See Stack v. Boyle*, 342 U.S. 1, 6 (1951) (holding bail determinations are immediately appealable); *Dotson v. Clark*, 900 F.2d 77, 78 (6th

Cir. 1990) (exercising jurisdiction over denial of habeas petitioner's request for release).

Kelsey timely filed a notice of appeal pursuant to Federal Rule of Appellate Procedure 4(b)(1)(A), within 14 days after the entry of the order being appealed. The District Court entered its order denying release on February 18, 2025, and Kelsey filed his notice of appeal on February 21, 2025, within the permitted timeframe.

Accordingly, this Court has jurisdiction to review the District Court's denial of emergency release and determine whether it constituted an abuse of discretion under governing law.

## STATEMENT OF THE ISSUES

1.  Whether the District Court abused its discretion in denying Brian Kelsey's motion for emergency release pending resolution of his § 2255 motion, where Kelsey has presented substantial claims of law, including newly discovered evidence proving his conviction was secured through perjured testimony and suppressed exculpatory evidence—evidence that, at a minimum, casts serious doubt on his guilt and establishes a strong likelihood of success on the merits.

2.  Whether the District Court abused its discretion in concluding that Kelsey failed to demonstrate exceptional circumstances warranting release, despite his consistent compliance with all conditions of bond, his lack of any risk of flight or danger to the community, and the fact that his sentence is short enough that he may serve most or all of it before his meritorious § 2255 motion is resolved.

## STATEMENT OF THE CASE

1. <u>Background</u>

Brian Kelsey dedicated nearly two decades to public service, serving in the Tennessee House of Representatives from 2004 to 2009 and then in the Tennessee Senate from 2009 to 2022. (Memorandum ISO Motion to Vacate, R. 201, PageID #: 1735). In 2016, he launched a bid for an open seat in Tennessee's 8th Congressional District. (*Id.*) As with any federal campaign, navigating the maze of campaign finance laws was a challenge, so he sought legal advice from Kory Langhofer, a nationally recognized election law attorney. (*Id.* at 1735-36). Langhofer assured Kelsey that his plan—donating leftover state campaign funds to an independent state committee, which could then transfer funds to a federal nonprofit—was legal. (*Id.*)

Following this advice, Kelsey donated approximately $106,000 from his state campaign account to the Standard Club PAC (SCPAC), a state political action committee run by Joshua Smith, a longtime political supporter. (Sealed Other Sentencing Document, R. 148). To ensure clarity, Langhofer pre-approved a statement for Kelsey to recite to Smith upon handing over the check: "There are no strings attached to this money whatsoever. You can spend it however you want. I suggest you speak to an attorney before you spend it." (Memorandum ISO Motion to Vacate, R. 201-1, Langhofer Declaration, PageID #: 1794-95). Kelsey followed

this advice, recorded his own words to Smith as instructed, and left the meeting without dictating any use of the funds. (Sealed Jessica Durham FD-302, Mar. 23, 2021, at 4, R. 148; *see also* R. 201-1, PageID #: 1794-95).

Even after pleading guilty, Smith later confirmed in a sworn court filing that he still believed the transaction was lawful and that neither he nor Kelsey had committed any crime. (*The Standard Restaurant, LLC v. Tennessee Alcoholic Beverage Comm'n, Davidson Co. Chancery Ct.*, Case No. 23-0497-IV, Am. Verified Petition, Apr. 19, 2023, R. 201-2, PageID #: 1818, ¶ 30(b)). Indeed, every transaction was reported in public campaign finance disclosures, and nothing in federal law prohibits a state PAC from contributing to a federal nonprofit or a federal nonprofit from spending funds to support a candidate. The government's case hinged entirely on the claim that Kelsey somehow directed how the funds were spent or coordinated the campaign expenditures of the federal nonprofit, despite the complete lack of any documentary evidence to support that theory.

2.    The Indictment

Kelsey lost the congressional primary, finishing fourth. Even without the disputed state PAC donations, he had raised more money than any other non-self-funded candidate. (Memorandum ISO Motion to Vacate, R. 201, PageID #: 1738-39). After his loss, two activist groups filed complaints with the Federal Election

Commission (FEC) and the Department of Justice, alleging campaign finance violations. (*Id.*, PageID #:1739). The FEC took no action, but years later, following a change in administrations, the Department of Justice revived the case—just before the statute of limitations ran out. (*Id.*)

Prosecutors sent target letters to Kelsey and his wife, pressuring them to testify against Dan Schneider and Matt Schlapp, two leaders of the American Conservative Union (ACU), which runs CPAC. (*Id.*) Kelsey refused, maintaining that neither he nor anyone involved had engaged in criminal activity. The government then offered him a deal: plead guilty or face an indictment. When he declined, prosecutors moved forward with their case, despite having lost and presumably failed to review over 2,700 documents Kelsey had provided in his defense (*Id.*, PageID #: 1740).

On October 22, 2021, a federal grand jury returned an indictment against Kelsey, charging him with conspiracy, illegal transfers of state campaign funds, and excessive contributions through coordinated communications. (Indictment, R. 1, PageID #: 1-13). The government's case relied almost entirely on the testimony of Jeremy Durham, an expelled Tennessee legislator who, when first approached, told prosecutors that Kelsey was a rule follower who would never knowingly break the law. But Durham now admits that when his statements did not match the

8

government's expectations, prosecutors pressured him, fed him false statements to read, and ultimately threatened him with prosecution if he did not comply. (Durham Recording, R. 201-4, PageID #: 2085). It was only after this coercion that Durham changed his story and implicated Kelsey. (*Id.*)

3.    <u>The Smith Recording and Government Misconduct</u>

Smith, too, ultimately took a plea deal in exchange for probation and a cooperation agreement. But before doing so, he was recorded in a phone call admitting that he was innocent—and, by extension, so was Kelsey. (Jarosemich Declaration, R. 201-5, PageID #: 2097-98). On August 5, 2022, Smith told another caller that he was being investigated for "something totally unrelated, that I had nothing to do with either." This statement directly contradicted his later guilty plea, in which he claimed he had knowingly participated in a crime. (*Id.*, PageID #: 2097).

Even worse, the government knew about this recording and hid it from Kelsey's defense team. (*Id.*, PageID #: 2097-98). The recording was emailed to lead prosecutors Amanda Klopf and John Taddei on August 9, 2022, and Klopf confirmed receipt—but they never disclosed it, in direct violation of their obligations under *Brady v. Maryland*. This evidence, which undermined the credibility of their key cooperating witness, did not surface until months later. (*Id.*).

4.    The Change of Plea

As Kelsey prepared for trial, his life was collapsing around him. His wife had just given birth to twins, adding to the demands of their three-year-old daughter. His father, dying of pancreatic cancer, had just entered hospice. (Memorandum ISO Motion to Vacate, R. 201, PageID #: 1742). Kelsey had repeatedly instructed his lawyers to file a motion to dismiss, arguing that the government's case was legally flawed. But just days before the deadline, Smith flipped and agreed to testify against him. (*Id.*)

With Durham and Smith now cooperating, the weight of the case shifted. Smith had previously insisted that he acted independently, but his plea agreement changed everything—now he claimed that he had acted as Kelsey's agent. (Smith Plea Agreement, R. 65, PageID #: 178). Facing the prospect of multiple government witnesses, an exhausted legal battle, and exhausted financial resources for legal fees, Kelsey entered into a plea agreement on November 22, 2022, pleading guilty to two counts. (Kelsey Plea Agreement, R. 73, PageID #: 206-222).

5.    New Evidence, the Government's Breach, Ineffective Assistance of Counsel, and the Motion for Release

Kelsey's § 2255 motion raises not just one, but multiple, powerful grounds for vacating his conviction. While the newly discovered recordings of Durham recanting his testimony and the government's suppression of the Smith recording

10

expose serious prosecutorial misconduct, the case is also marred by egregious failures of defense counsel at every critical stage of the proceedings.

At sentencing, Kelsey's trial counsel failed to object when the government blatantly violated the plea agreement by pushing for an obstruction of justice enhancement—a move that directly increased Kelsey's sentencing range. (Tr. Sentencing Hr'g, R. 157, PageID # 1145-46). On appeal, the Sixth Circuit recognized the strength of Kelsey's claim that the government breached the plea agreement, noting that if trial counsel had objected properly, Kelsey likely would have prevailed. *See United States v. Kelsey*, 2024 WL 3326022, at *4-5 (6th Cir. July 8, 2024), *cert. denied*, 2025 WL 76500 (U.S. Jan. 13, 2025) Instead, this Court was forced to review the issue for plain error, an impossible standard that resulted in the denial of relief. *Id*.

Kelsey's ineffective assistance of counsel claim does not end there. He also received deficient representation when he sought to withdraw his guilty plea. Just five days after pleading guilty, he emailed his attorney stating, "I've been sick at my stomach ever since talking to Judge Crenshaw. Is there anything you can do to withdraw my plea and file the motion to dismiss?" (Kelsey Decl., R. 201-4, PageID #: 2027-28). Two days later, he drafted the motion himself and sent it to his lawyers. They refused to file it. (*Id*., PageID #: 2030-68). It was not until months later, when

11

Kelsey retained new counsel, that his motion to withdraw his plea was finally filed. (Motion to Withdraw Plea, R. 93, PageID #: 285-342). At the hearing on that motion, the government called one of his attorneys, who was still representing him, as a witness. (Tr. Plea Withdrawal Hr'g, R. 119, PageID #: 656). But that testifying attorney falsely told the judge that the first time he ever heard of any desire from Kelsey to withdraw his plea was months after it was entered. (*Id.*) Then, Kelsey's hearing attorney failed to cross-examine him with the emails proving Kelsey's immediate regret and efforts to withdraw the plea. (*Id.*, PageID #: 657). He also neglected to present expert testimony on the extreme duress he was under at the time of his plea—sleep deprivation from newborn twins, the emotional toll of his father's terminal illness, and the overwhelming pressure of a felony prosecution. The District Court denied his motion to withdraw, citing the lack of an expert witness and the delay in filing—without knowing that Kelsey had, in fact, attempted to withdraw just days after pleading guilty.

Armed with these revelations, Kelsey moved for emergency release pending the outcome of his § 2255 proceedings, arguing that his conviction rested on perjured testimony, suppressed exculpatory evidence, a breached plea agreement, and ineffective assistance of counsel. (Emergency Motion, R. 198). Despite these compelling claims, the District Court denied his motion for release, failing to

meaningfully consider the extraordinary circumstances and overwhelming new evidence. (Opinion, R. 215). This appeal follows.

SUMMARY OF THE ARGUMENT

The District Court abused its discretion in denying Brian Kelsey's motion for release pending resolution of his § 2255 motion. A petitioner establishes a substantial claim of law when there is a reasonable basis to question the validity of the conviction, particularly where newly discovered evidence casts doubt on guilt. While the Sixth Circuit has not definitively ruled on whether *Brady v. Maryland* applies before a guilty plea, it has recognized that this remains an open question. *See Robertson*, 753 F.3d at 621. The Court should apply it in this case because the Local Rules of the Middle District of Tennessee—approved by this Court—require *Brady* disclosures. *See* LCrR16.01(a)(3)[1].

---

[1] Exculpatory and Impeachment Information and Material. The government shall provide exculpatory and impeachment information and material to the defendant at the following times, absent the issuance of a protective order by the Court:

    (A)    Information and material that is exculpatory within the meaning of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny must be disclosed reasonably promptly  upon discovering it.

    (B)     Information and material that is impeaching within the meaning of *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny must be disclosed within a reasonable time before trial to allow the trial to proceed efficiently.

    (C)    In making these disclosures, the government is expected to take a broad view of what constitutes exculpatory and impeachment information.

13

Here, Kelsey's § 2255 motion is built on powerful evidence that his conviction was unlawfully obtained, including perjured testimony, suppressed exculpatory evidence, and a breached plea agreement—a fact the Sixth Circuit has already recognized as a serious legal issue. Additionally, his counsel's failure to object at sentencing, failure to file a timely plea withdrawal motion, and failure to properly preserve appellate arguments deprived him of his constitutional right to effective assistance. These claims establish a strong likelihood of success on the merits.

The District Court also erred in concluding that Kelsey failed to demonstrate exceptional circumstances warranting release. Kelsey has never been a flight risk or a danger to the community—he complied with every condition of pretrial and post-conviction release, including during his appeal to this Court. And he complied with this Court's further release as he petitioned the Supreme Court for review. Additionally, his sentence is so short that he may serve most or all of it before his § 2255 motion is resolved, a factor that courts have repeatedly found supports release. The District Court ignored these considerations, treating Kelsey's request as routine rather than recognizing the constitutional violations that demand immediate review.

By failing to properly assess the strength of Kelsey's claims and the injustice of keeping him incarcerated while his meritorious petition is pending, the District

14

Court abused its discretion. Kelsey has met every requirement for release, and this Court should reverse.

## ARGUMENT

A defendant seeking release pending resolution of a 28 U.S.C. § 2255 motion must demonstrate both a substantial claim of law and exceptional circumstances warranting release. *Dotson*, 900 F.2d at 79. The Sixth Circuit reviews the denial of such a motion under an abuse of discretion standard. *See Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993).

Here, Mr. Kelsey's § 2255 motion is built on overwhelming legal and factual grounds for relief. His conviction is tainted by a breached plea agreement, perjured testimony, suppressed exculpatory evidence, and ineffective assistance of counsel at every critical stage of the proceedings. These are not speculative arguments—they are already recognized as substantial by this Court. And the exceptional circumstances here could not be clearer: a defendant with no risk of flight, no danger to the community, and a case that presents profound constitutional violations warranting post-conviction relief.

By dismissing these issues without a full and fair analysis, the District Court abused its discretion, misapplying the requisite legal standard and ignoring the interests of justice. This Court should reverse.

15

I.    Kelsey's § 2255 Motion Presents a Substantial Claim of Law Because Newly Discovered Evidence and Government Misconduct Call His Conviction into Serious Question.

A defendant establishes a substantial claim of law for purposes of release when there is a strong likelihood of success on the merits. Courts have found that a substantial claim of law exists where newly discovered evidence suggests the petitioner's innocence. *See, e.g., Mahan v. Douglas*, 643 F. Supp. 3d 783, 785 (E.D. Mich. 2022). Kelsey has presented precisely that: his conviction rested on perjured testimony and suppressed exculpatory evidence, and the government breached the plea agreement and induced a guilty plea under false pretenses. The District Court disregarded this evidence, treating it as irrelevant simply because Kelsey entered a guilty plea. That conclusion is legally erroneous.

The *Brady* violation in this case is not merely a procedural issue—it undermines the entire legitimacy of Kelsey's plea. The government suppressed exculpatory evidence that would have dramatically altered Kelsey's decision to plead guilty. At the time of his plea, prosecutors were already in possession of a recording in which Joshua Smith, a key cooperating witness, denied having engaged in any criminal conduct—a direct contradiction of the government's theory of the case. Prosecutors never disclosed this evidence. They also coerced false testimony from Jeremy Durham, who has since admitted that he initially told the truth—that Kelsey

16

never directed him to engage in illegal conduct—but was pressured into changing his statements.

The District Court rejected Kelsey's *Brady* claim on the ground that he had already pleaded guilty, reasoning that "[r]egardless of whether the Government did something nefarious by not disclosing these recordings sooner, Kelsey's allegations of Government misconduct do not erase his guilty plea or his admission to the Factual Basis of his plea agreement." (Opinion, R. 215, PageID #: 2275). But that conclusion assumes what it seeks to prove. Kelsey is not arguing that his guilty plea should be "erased" simply because the government withheld evidence—he is arguing that the suppression of exculpatory evidence rendered his plea involuntary, which is a recognized basis for post-conviction relief.

While the Supreme Court in *United States v. Ruiz* held that the government is not required to disclose impeachment evidence before a plea, it did not resolve whether the same rule applies to exculpatory evidence of actual innocence. 536 U.S. 622, 629-31 (2002). The Sixth Circuit itself has acknowledged that "whether prosecutors must disclose such evidence before a defendant pleads guilty remains an open question in this circuit." *Robertson*, 753 F.3d at 621. Several circuits have recognized that *Ruiz* does not apply to evidence that directly negates a defendant's guilt, as opposed to impeachment material. *See United States v. Ohiri*, 133 F. App'x

17

555, 562 (10th Cir. 2005) (holding that *Ruiz* does not permit the government to withhold exculpatory evidence before a guilty plea); *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003) (finding that *Ruiz* "indicates a significant distinction between impeachment information and exculpatory evidence of actual innocence"). While other courts have treated *Ruiz* more broadly, *see, e.g., United States v. Conroy*, 567 F.3d 174, 179 (5th Cir.2009), the question remains unsettled.

This case presents the precise scenario that *Ruiz* left open: whether a defendant's guilty plea is involuntary when the government withholds evidence that directly exonerates him. The suppressed Smith recording and the coercion of Durham—both of which fatally undermine the government's case—are not mere impeachment material but substantive exculpatory evidence that cuts to the core of Kelsey's guilt. "[A]s far back as 1954 a case reported from the Supreme Court of the United States held that a denial of guilt in an extrajudicial statement subsequent to an alleged crime is exculpatory." *Cagle v. Davis*, 520 F. Supp. 297, 306 (E.D. Tenn. 1980) (citing *Opper v. United States*, 348 U.S. 84, 91 (1954)). In *Opper*, the Supreme Court described exculpatory statements as those, like the Smith Recording, that are "'denying guilt.'" *Cagle*, 520 F. Supp. at 306 (quoting *Opper*, 348 U.S. at 91, n. 7.) If this Court ultimately determines that *Brady* applies, Kelsey's plea was

18

unconstitutional. At the very least, the legal uncertainty surrounding this issue makes it a substantial claim of law, further justifying release.

Middle District of Tennessee Local Criminal Rule 16.01 was adopted January 24, 2020. (Admin. Order No. 199-2 at 1). It marked a wholesale rewrite of the local criminal rule on discovery. (*Id*. at 3, ¶ 10). The prior rule made no mention of *Brady* material. (Admin. Order No. 199-1 at 18-19). But the new rule required that exculpatory *Brady* material be disclosed "reasonably promptly upon discovering it." *Id*. at 19. This moved the government's disclosure of *Brady* material earlier in the process than some of this Court's prior *Brady* analyses, which had required that it be given only in time for use at trial. But this Court blessed this earlier timeframe, (M.D. Tenn. Notice, June 10, 2020), and the government violated Kelsey's due process rights under *Brady* by not complying with its discovery obligations under the local rules and the District Court's Due Process Protections Act Order. (Order, R. 12, Page ID#: 56). *See also* Fed. R. Crim. P. 5(f).

The government's breach of the plea agreement provides an additional basis for relief. This Court has already recognized that this issue is legally significant. The government explicitly agreed not to seek any additional sentencing enhancements but then advocated for an obstruction enhancement at sentencing. The Sixth Circuit found that Kelsey had the better argument on the meaning of the agreement, but

19

because trial counsel failed to object, the issue was reviewed only for plain error rather than de novo. That distinction was decisive. Under de novo review, any ambiguity in the plea agreement would have been resolved in Kelsey's favor. Instead, under plain error review, the appellate court was forced to construe the ambiguity against him.

The District Court misapplied the prejudice analysis, conflating whether Kelsey was prejudiced by the government's breach with whether he was prejudiced by his trial counsel's failure to object. The correct inquiry is whether ineffective assistance of counsel prevented Kelsey from obtaining relief, not whether the District Court might have imposed the same sentence anyway. *See Santobello v. New York*, 404 U.S. 257, 262 (1971) ("We need not reach the question whether the sentencing judge would or would not have been influenced" by the breach of the plea agreement; the government's failure to honor the agreement alone is sufficient to require relief).

Kelsey's ineffective assistance of counsel claims extend far beyond his trial counsel's failure to object to the government's plea breach. His attorneys failed him at nearly every critical stage of the case, compounding one error after another in ways that significantly prejudiced him.

After pleading guilty, Kelsey immediately expressed serious reservations about his plea. Just five days later, he informed his attorneys that he wanted to

20

withdraw it. Instead of acting on his request, his attorneys refused to file the motion he drafted himself. When new counsel eventually filed the motion months later, the District Court denied it, citing delay. But that delay was entirely caused by Kelsey's attorneys, not by Kelsey himself. The District Court's ruling relied on factually inaccurate testimony from Kelsey's own counsel, who falsely claimed that Kelsey had waited months to express misgivings about his plea. Giving false testimony against the interests of one's client is clearly ineffective assistance. The attorney was never cross-examined with the emails proving that Kelsey sought to withdraw just days after pleading guilty. The failure to confront this testimony with documentary proof was another instance of ineffective assistance, and the District Court relied on that false timeline to rule against Kelsey.

Kelsey's appellate counsel failed him as well. Despite clear legal grounds to challenge the validity of his guilty plea—especially given the District Court's own ruling that his statements at the plea colloquy were false—his appellate counsel did not raise the issue. This omission cost Kelsey a powerful argument on appeal.

Kelsey's first attorney was also ineffective in failing to file a motion to dismiss. Recently, the Sixth Circuit has indicated that the Supreme Court is likely to rule that campaign coordination is protected political speech and cannot constitute a crime. Had his counsel filed a motion to dismiss raising this issue, Kelsey's case may have

been resolved before trial. Instead, his attorneys failed to challenge the government's case on fundamental legal grounds, allowing the prosecution to proceed unchallenged.

Each of these failures—the refusal to file Kelsey's motion to withdraw, the giving of false testimony against one's client, the failure to cross-examine a key witness at the plea withdrawal hearing, the failure to challenge the guilty plea on appeal, and the failure to seek dismissal of the charges on constitutional grounds—contributed to a fundamentally unreliable conviction. The Supreme Court has long recognized that when multiple deficiencies in representation compound one another, the cumulative effect can establish ineffective assistance of counsel even if no single error alone would suffice. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) (holding that ineffective assistance is established when counsel's performance, taken as a whole, undermines confidence in the outcome).

The District Court failed to meaningfully engage with these claims, treating Kelsey's ineffective assistance argument as a single, narrow claim about the plea breach, when in reality, his counsel's failures permeated the entire case. These errors go beyond technical missteps; they fundamentally deprived Kelsey of his right to competent legal representation at every stage of the proceedings. This alone is

22

sufficient to establish a substantial claim of law and to warrant release while his § 2255 motion is adjudicated.

II.    The District Court Abused Its Discretion in Finding That Kelsey Failed to Establish Exceptional Circumstances Warranting Release.

A defendant seeking release pending resolution of a § 2255 motion must demonstrate not only a substantial claim of law but also exceptional circumstances that make continued incarceration unjust. *Dotson*, 900 F.2d at 79. Courts have recognized that exceptional circumstances exist where a petitioner is not a risk of flight or a danger to the community, and where the length of a sentence is so short that the petitioner risks serving most or all of it before a court has the opportunity to resolve his claims. The District Court misapplied this standard, failing to properly account for both factors.

Kelsey is neither a flight risk nor a danger to the community. He has remained on bond at multiple stages of this case, including before trial, during his direct appeal, and even while this Court allowed him to petition the Supreme Court, all without incident. There is no evidence that he has ever violated the terms of his release or posed a threat to public safety. Courts have routinely found that when a petitioner has demonstrated compliance with bond conditions and has no history of violence or danger, release pending resolution of post-conviction claims is

23

appropriate. *See, e.g., Clark v. Hoffner*, 2020 WL 1703870, at *5 (E.D. Mich. Apr. 8, 2020) (recognizing that release is warranted where a defendant has a history of compliance with bond conditions and presents no danger to the community). The District Court failed to meaningfully consider Kelsey's unblemished record of compliance, relying instead on generalized concerns about post-conviction detention that have no application to the facts of this case.

The District Court also disregarded one of the most well-established bases for finding exceptional circumstances: the fact that Kelsey's sentence is short enough that he risks serving most or all of it before his § 2255 motion is resolved. Courts have long recognized that when a petitioner's sentence is relatively brief, continued incarceration pending post-conviction review creates a significant risk that the petitioner will complete his sentence before the court has had the opportunity to rule. In such cases, release is appropriate to avoid the irreparable harm of an unjust conviction going uncorrected simply because the judicial process took too long. *See, e.g., Boyer v. City of Orlando*, 402 F.2d 966 (5th Cir. 1968) (finding bail should be awarded where sentence was so short that if bail were denied and habeas petition eventually granted, defendant would already have served his sentence); *Denney v. United States*, 2010 WL 11627531, at *5 (N.D. Ga. Feb. 5, 2010) ("Given the short time frame between now and Movant's completion of his sentence [approximately

15 months], this Court finds that exceptional circumstances exist to warrant his release on bond until the resolution of this § 2255 motion by a final order.").

In *United States v. Lyons*, 2024 WL 3898550, at *4–8 (D.D.C. Aug. 22, 2024), former Chief Judge Beryl Howell granted release pending review of a § 2255 claim, even though the defendant had not filed a direct appeal. There, the government conceded at least three ways a defendant can show exceptional circumstances, one of which Mr. Kelsey asserts: "short sentences for relatively minor crimes so near completion that extraordinary action is essential to make collateral review truly effective." *Id.* at *7 (quoting Gov't Opp'n, quoting *United States v. Roberts*, 250 F.3d 744 (5th Cir. 2001)). Here, however, the government took the opposite position. (Response, R. 207, PageID #: 2199). While the District Court acknowledged this argument in passing, it failed to properly weigh its significance, treating it as a minor concern rather than the well-established ground for release that it is.

Moreover, the strength of Mr. Kelsey's substantial claim of law—based on Mr. Little's admitted ineffective assistance and supported by a binding appellate decision—in and of itself constitutes an exceptional circumstance. *See United States v. Mett*, 41 F.3d 1281, 1282 (9th Cir. 1994) ("In the habeas context, this court has reserved bail for 'extraordinary cases involving special circumstances or a high probability of success.'"). This combination of ineffective assistance, binding

25

precedent, and compelling new evidence of innocence creates precisely the "extraordinary case" warranting release under *Mett*.

Yet another exceptional circumstance is the change in law, which was pivotal in *Lyons* and is equally relevant here. In *Lyons*, the Court determined the defendant had raised "a sufficiently substantial question of law" where the Supreme Court had recently "decline[d] to adopt the Government's interpretation" of the obstruction statute. *Lyons*, 2024 WL 3898550, at *5 (discussing the implications of *Fischer v. United States*, 603 U.S. 480 (2024)). Similarly, and relevant to this case, the Sixth Circuit en banc panel has opined that the Supreme Court is likely to invalidate the prohibition on campaign coordination under which Mr. Kelsey was convicted. *See Nat'l Republican Senatorial Comm.,* 117 F.4th at 393. Whether Mr. Kelsey pleaded guilty is irrelevant to these discussions; the extraordinary nature of his claims and the evolving legal landscape only underscore the urgency of release pending resolution of his § 2255 motion. And it would be wholly unjust for Mr. Kelsey to be sitting in prison while the Supreme Court overturns his statute of conviction, as this Court has predicted.

It is also truly exceptional that the Court has found Mr. Kelsey's inculpatory statements at the change-of-plea hearing to be false, while the exculpatory statements were true. (Transcript, R. 157 at 18:19–24.) It is not the court's role, at

26

this stage, to make definitive rulings on guilt or innocence. Nevertheless, the District Court's finding undeniably raises the question of whether an innocent man has been wrongfully convicted. This circumstance alone makes "the motion for bail exceptional and deserving of special treatment in the interests of justice." *Dotson*, 900 F.2d at 79.

The Durham Recordings independently justify Mr. Kelsey's release. To grant release, "extraordinary or exceptional circumstances must exist." *United States v. Spalla*, 762 F.2d 1011, 1011 (6th Cir. 1985). A "trustworthy eyewitness account[]" qualifies as "extraordinary" when it constitutes "new reliable evidence" supporting a claim of actual innocence. *House v. Bell*, 547 U.S. 518, 537 (2006). As this Court itself observed during the plea withdrawal hearing, when a defendant who has pleaded guilty asserts innocence, "[t]hey come forward with some kind of objective evidence . . . that suggests innocence. What's that here?" (Transcript, R. 119, PageID#: 614). The Durham Recordings answer that question unequivocally.

Equally compelling is the Smith Recording. The emergence of three recorded statements from the two primary witnesses against Mr. Kelsey—each affirming his innocence—is truly extraordinary. These recordings, combined with the Court's own findings regarding the falsity of Mr. Kelsey's inculpatory statements, present an extraordinary and exceptional circumstance that demands his continued release

27

pending final resolution of his § 2255 motion. Ultimately, this Court should not only continue Mr. Kelsey's release but, after full consideration of the § 2255 motion, vacate his conviction.

By failing to meaningfully engage with Kelsey's lack of flight risk, his history of compliance with release conditions, and the reality that his sentence is short enough to risk full completion before post-conviction review, the District Court misapplied the exceptional circumstances standard. This was an abuse of discretion. Kelsey has satisfied every requirement for release, and this Court should reverse the District Court's denial of his motion.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's denial of Mr. Kelsey's motion for emergency release pending resolution of his § 2255 motion. Mr. Kelsey's conviction rests on perjured testimony, suppressed exculpatory evidence, a breached plea agreement, and ineffective assistance of counsel—each of which establishes a substantial claim of law with a strong likelihood of success on the merits. Further, the extraordinary circumstances of his case—his lack of flight risk, consistent compliance with all conditions of bond, and the short duration of his sentence, which may be fully served before adjudication of his claims—underscore the urgency of granting relief.

28

The law does not require a defendant to remain incarcerated while his conviction unravels under the weight of constitutional violations and government misconduct. Mr. Kelsey has satisfied every requirement for release, and continued incarceration would render any ultimate victory hollow. This Court should reverse the District Court's denial of release and grant Mr. Kelsey's motion.

Respectfully submitted,

*/s/ Kent Wicker*
Kent Wicker
WICKER / BRAMMELL, PLLC
323 W. Main Street, 11th Fl.
Louisville, Kentucky 40202
Telephone: (502) 780-6185
kent@wickerbrammell.com

*Counsel for Appellant Brian Kelsey*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

I hereby certify that, excluding the parts of the Brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Sixth Circuit Rule 32(b)(1), this brief contains 6089  words.

I further certify that this Brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) - (6). This Brief has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font.

<u>*/s/ Kent Wicker.*</u>
Kent Wicker

30

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true and accurate copy of the foregoing was electronically filed with the Court on this 21st day of February, 2025, which will electronically notify all counsel of record.

<u>/s/ Kent Wicker</u><br>Kent Wicker

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rules 28(b)(1)(A)(i) and 30(g)(1), Appellant designates the following docket entries:

| RE # | Description | Page ID Range |
|------|-------------|---------------|
| 1 | Indictment | 1 - 15 |
| 12 | Order Regarding *Brady* Materials | 56 |
| 65 | Smith Plea Agreement | 172 - 189 |
| 73 | Kelsey Plea Agreement | 206 – 222 |
| 93 | Motion to Withdraw Plea | 285 - 342 |
| 119 | Transcript - Plea Withdrawal Hearing | 483 - 699 |
| 148 | Sealed Other Sentencing Document | - |
| 157 | Transcript - Sentencing Hearing | 1133 - 1253 |
| 198 | Memorandum ISO Emergency Motion for Release | |
| 201 | Memorandum ISO Motion to Vacate (and exhibits thereto) | 1725 - 2177 |
| 207 | Response in Opposition | 2194 - 2219 |
| 215 | Memorandum and Opinion and Order | 2268 - 2277 |