No. 25-5138

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

**BRIAN KELSEY**

*Defendant-Appellant.*

On Appeal from United States District Court for the Middle District of Tennessee, No. 3:21-cr-00264-1

**REPLY BRIEF OF THE APPELLANT BRIAN KELSEY**

Kent Wicker
WICKER / BRAMMELL PLLC
323 W. Main Street, 11th Floor
Louisville, Kentucky 40202
Telephone: (502) 780-6185
kent@wickerbrammell.com
*Counsel for Brian Kelsey*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Introduction ...............................................................................................................1

Argument...................................................................................................................1

    I.      Mr. Kelsey's Case Presents Substantial Claims of Law ............................2

    II.     Mr. Kelsey's Case Presents Exceptional Circumstances Justifying Release ...................................................................................................10

Conclusion ..............................................................................................................11

Certificate of Compliance/Certificate of Service....................................................12

# TABLE OF AUTHORITIES

Cases                                                                                                          Page(s)

*Brady v. Maryland*, 373 U.S. 83 (1963) ........................................................7, 8, 9, 11

*Denney v. United States*, 2010 WL 11627531 (N.D. Ga. Feb. 5, 2010) ................11

*Dotson v. Clark*, 900 F.2d 77 (6th Cir. 1990) ......................................................... 1-2

*Fauntleroy v. Patton,* 2007 WL 1100202, (E.D. Ky. Apr. 11, 2007).......................10

*Fed. Election Comm'n v. Colorado Republican Fed. Campaign Comm.*,
    533 U.S. 431 (2001) ..............................................................................................2

*Napue v. Illinois*, 360 U.S. 264 (1959).......................................................................9

*Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*,
    117 F.4th 389 (6th Cir. 2024) ............................................................................2, 3

*Opper v. United States*, 348 U.S. 84 (1954) ..............................................................8

*Santobello v. New York*, 404 U.S. 257 (1971) ...........................................................5

*Strickland v. Washington*, 466 U.S. 668 (1984) .....................................................4, 6

*United States v. Berry*, 911 F.3d 354 (6th Cir. 2018)...............................................10

*United States v. Kelsey*, 2024 WL 3326002 (6th Cir. July 8, 2024).....................3, 4

*United States v. Lyons*, 2024 WL 3898550 (D.D.C. Aug. 22, 2024) ......................10

*United States v. Roberts*, 250 F.3d 744 (5th Cir. 2001)...........................................10

*United States v. Soto*, 189 F. App'x 470 (6th Cir. July 20, 2006)............................10

| Statutes | Page(s) |
| --- | --- |
| 28 U.S.C. § 2255 | 1 |

## INTRODUCTION

The Government's response treats Mr. Kelsey's emergency motion for release as if it arose from a run-of-the-mill post-conviction proceeding. It does not. This appeal presents substantial claims of law and exceptional circumstances warranting release pending resolution of Kelsey's 28 U.S.C. § 2255 motion: newly discovered evidence directly implicating prosecutorial misconduct, a plea tainted by undisclosed exculpatory evidence, a statute of conviction being challenged on *certiorari* to the Supreme Court, and the Government's blatant breach of its plea agreement in ways this Court has already recognized warrant serious consideration. All of this has resulted in the imprisonment of a nonviolent, first-time offender sentenced to 21 months in prison—a length of sentence that multiple courts in this circuit have recognized as "short." For these reasons, Mr. Kelsey respectfully requests this Court reverse and order his release.

## ARGUMENT

To prevail on his motion for release pending resolution of his § 2255 motion, Mr. Kelsey must demonstrate (1) a substantial claim of law supported by the facts surrounding his petition, and (2) the presence of exceptional circumstances that make his request "deserving of special treatment in the interests of justice." *Dotson v.*

*Clark*, 900 F.2d 77, 79 (6th Cir. 1990). As explained below, and for the reasons set forth in his principal brief, Mr. Kelsey satisfies both prongs.

I. Mr. Kelsey's Case Presents Substantial Claims of Law.

As an initial matter, the Government attempts to dismiss the significance of *Nat'l Republican Senatorial Comm. v. FEC*, 117 F.4th 389 (6th Cir. 2024) (*en banc*), by treating it as irrelevant to Mr. Kelsey's case. That is wrong. While *NRSC* involved party expenditures rather than candidate-PAC coordination, this Court's analysis in *NRSC* directly undermines the legal foundation of Mr. Kelsey's prosecution.

In *NRSC*, the *en banc* Court acknowledged that the constitutional ground beneath campaign coordination restrictions has shifted dramatically since the Supreme Court upheld those limits in *Fed. Election Comm'n v. Colorado Republican Fed. Campaign Comm.*, 533 U.S. 431 (2001). *See NRSC*, 117 F.4th at 391. Although the *NRSC* Court ultimately upheld the party expenditure restriction at issue, it did so only because it was bound by Supreme Court precedent. *Id.* The Court did not endorse the Government's expansive view of coordination laws. Instead, the Sixth Circuit went out of its way to signal that if not for controlling precedent, it would have viewed such restrictions with deep constitutional skepticism. *Id.*

That skepticism matters profoundly here. Mr. Kelsey's conviction rested entirely on allegations of coordination—the very type of restriction the Sixth Circuit

2

has now flagged for reconsideration. This is not a speculative or hypothetical question. The legal landscape surrounding Kelsey's prosecution is actively shifting, and *NRSC* demonstrates that the core theory underlying Kelsey's plea stands on increasingly unstable ground. The decision reflects a Court reluctant to uphold these restrictions on the merits but constrained by higher authority. That posture confirms that Kelsey's legal challenge is substantial—and it confirms that this is exactly the kind of evolving legal question that warrants release pending § 2255 review.

The Government also tries to minimize the seriousness of Mr. Kelsey's ineffective assistance of counsel claims. First, the Government attempts to downplay the ineffectiveness of Mr. Kelsey's prior counsel by asserting that "this Court never remarked on the performance of Kelsey's attorney." (Gov't Br., Doc. 7, PageID # 20). That is demonstrably false. The Sixth Circuit's prior opinion explicitly criticized counsel's performance, repeatedly describing the sentencing objection as "vague," "not specific," "brief," "vague and noncommittal," "terse," and ultimately a "total failure to prompt the district court to make necessary findings or to request any relief. . . . ." *United States v. Kelsey*, 2024 WL 3326022, at *4-5 (6th Cir. July 8, 2024), cert. denied, 2025 WL 76500 (U.S. Jan. 13, 2025). The panel went on to acknowledge this failure cost Kelsey by resulting in plain error review rather than the more favorable *de novo* standard. *Id*. at *6.

3

This is not just a passing critique—it is a judicial finding of inadequate performance under *Strickland v. Washington*, 466 U.S. 668 (1984). The Government's attempt to rewrite the record ignores the panel's clear acknowledgment that competent counsel would have triggered *de novo* review, likely resulting in a ruling in Mr. Kelsey's favor. Specifically, the Court recognized that both parties acknowledged "at least some ambiguity" in the plea agreement, and the Court held that—under plain error review—that ambiguity was resolved in favor of the Government. *Id.* Had counsel objected adequately, the ambiguity would have been resolved "in Kelsey's favor." *Kelsey*, 2024 WL 3326022, at *6. This is a clear indication that effective assistance would have changed the outcome—a textbook example of prejudice under *Strickland*.

The Government also conflates two distinct prejudice inquiries: (1) whether the Government's breach of the plea agreement prejudiced Mr. Kelsey, and (2) whether his counsel's ineffective assistance in failing to object adequately prejudiced him. These are legally and factually distinct inquiries, and the Sixth Circuit addressed both. The Government's breach prejudiced Mr. Kelsey by exposing him to an enhancement that the Government had promised not to pursue. But separately, counsel's inadequate objection prejudiced Mr. Kelsey by depriving him of *de novo* review on appeal. Under *de novo* review, the Sixth Circuit would have read the

ambiguous plea agreement in Kelsey's favor—likely leading to a reversal of the enhancement and a remand for resentencing. *See Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.")).

Finally, even Mr. Kelsey's own prior counsel—Alex Little—admitted to the district court that his performance was deficient and that his failure to adequately object cost Mr. Kelsey his appeal and his opportunity to withdraw from the plea agreement. (*See* Little Decl., Doc. 201-6, PageID # 2111). When a lawyer himself admits that his performance was constitutionally deficient and resulted in direct prejudice to his client, the case for ineffective assistance becomes overwhelming. The Government's refusal to acknowledge these admissions only underscores its inability to rebut this substantial claim of law.

Furthermore, the portrayal of counsel's failures at his plea withdrawal hearing ignores the core problem: at a critical hearing that directly impacted whether Mr. Kelsey would be allowed to withdraw his plea, his own counsel, Bruno, gave false and materially misleading testimony about when Mr. Kelsey first expressed his desire to withdraw. The Government does not dispute that Bruno still represented Mr. Kelsey at the time of the hearing and had an affirmative duty of candor to the court.

Yet Bruno's testimony falsely suggested that February 2023 was the first time Mr. Kelsey raised the issue of withdrawal. That was demonstrably untrue. The record contains clear, contemporaneous evidence—an email from November 2022, just five days after the guilty plea—in which Mr. Kelsey told Bruno that he was "sick at [his] stomach" and asked "Anything [you] can do to withdraw?" (Kelsey Decl., Doc. 201-4, PageID # 2027). This evidence shows Bruno knew from the outset that Mr. Kelsey wanted to withdraw his plea and misrepresented that fact to the court.

The Government dismisses this evidence as immaterial, but it was central to the district court's ruling. The court cited the supposed delay in seeking withdrawal as a factor undermining Mr. Kelsey's credibility and contributing to its finding that his motion was not "well taken." (Withdrawal Hearing Transcript, Doc. 119, PageID # 691). By falsely extending the timeline from five days to several months, Bruno deprived his client of a critical argument: that his desire to withdraw was not a late-game tactical maneuver, but an immediate response to regretting an ill-advised plea. This falsehood prejudiced Mr. Kelsey under any reasonable reading of *Strickland*.

The prejudice flowing from Bruno's misstatement is heightened by the district court's application of what amounts to an unwritten, *de facto* rule: that motions to withdraw guilty pleas must generally be filed within thirty days of the plea. By falsely moving the timeline from November 2022 to February 2023, Bruno made Mr.

6

Kelsey's motion appear presumptively untimely under this informal standard. This failing compounded the damage caused by Bruno's false testimony and rendered the ineffective assistance particularly prejudicial.

The Government's response further attempts to minimize its suppression of the Smith Recording by suggesting that the recording's relevance and exculpatory nature are dubius. That argument does not withstand scrutiny. As Mr. Kelsey has explained, the Smith Recording is both exculpatory and material under *Brady v. Maryland*, 373 U.S. 83 (1963). It contains Smith's contemporaneous denial of involvement in the very conspiracy to which Mr. Kelsey pleaded guilty—evidence that directly undermines the factual basis for Mr. Kelsey's plea. The Government's continued inability, even now, to account for whether it received the recording further underscores the severity of this violation. (*See* Kelsey Motion for Discovery, Doc. 202, PageID # 2178.) This is not a mere oversight; it raises the possibility that the Government either knowingly suppressed the evidence or improperly destroyed it—either of which constitutes a flagrant violation of Mr. Kelsey's due process rights.

The Government's argument that it is unclear whether Smith was referring to this case is equally unconvincing. The full context of the recording makes clear that Smith was addressing his involvement in this prosecution. When accused of having "FBI agents in his pocket," Smith responds, "Man, I don't have FBI agents in my

7

pocket. I'm under investigation for something else, that I had nothing to do with either." (Smith Recording, Doc. 201-5, at 0:29-36). This statement is not ambiguous—it directly refutes Smith's alleged role in the very conduct underlying Mr. Kelsey's plea. The Government's attempt to create doubt where there is none only highlights its failure to meet its obligation of candor.

The Government also claims that Smith's denial of guilt is not exculpatory, a position directly contradicted by Supreme Court precedent. In *Opper v. United States*, 348 U.S. 84, 90 (1954), the Supreme Court acknowledged that out-of-court statements denying involvement in criminal activity have exculpatory value. This is especially true here, where Smith's denial directly rebuts the core premise of the Government's case: that Mr. Kelsey and Smith conspired together. Moreover, the Government ignores the district court's Due Process Protections Act order, which required the Government to produce exculpatory material "reasonably promptly upon discovery." (Order, Doc. 12, PageID # 56). Suppressing the Smith Recording until after Mr. Kelsey pleaded guilty—despite its obvious relevance and exculpatory nature—violated both *Brady* and the district court's explicit order.

This misconduct does not stand alone. The Government's coercion of its own "star witness," Jeremy Durham, compounds the constitutional violations. Durham—on not one, but two secret recordings—admitted that the Government threatened him

8

with indictment unless he changed his testimony to implicate Mr. Kelsey. (*See* Kelsey Memo in Support of Emergency Release, Doc. 198, PageID ## 1493-1494.) Durham further revealed that his own lawyer was not present when the Government pressured him into reading a false script to the grand jury—an egregious violation of Mr. Kelsey's due process rights under *Napue v. Illinois*, 360 U.S. 264, 271 (1959). This Court has long recognized that secret recordings made contemporaneously with alleged coercion are highly reliable evidence, especially when they capture admissions against interest by the Government's own witness.

The Government does not—and cannot—meaningfully dispute that if Durham's original statements exonerated Mr. Kelsey, those statements were subject to mandatory disclosure under *Brady*. Nor does the Government deny that it never disclosed those statements to Mr. Kelsey prior to his plea. That suppression, coupled with the fabrication of Durham's grand jury testimony, constitutes precisely the type of prosecutorial misconduct that warrants post-conviction relief.

Taken together, the suppression of the Smith Recording, the coercion of false testimony from Durham, and the Government's broader pattern of concealment and manipulation leave no doubt that Mr. Kelsey has presented a substantial claim of prosecutorial misconduct. The Government's case has collapsed under the weight of its own misconduct. Both key witnesses have now recanted, and the district court

itself concluded that Mr. Kelsey's statements accepting guilt were false. (*See* Sentencing Transcript, Doc. 157, at 18:20-21) ("[Mr. Kelsey] was not truthful when he told the Court that he was, in fact, guilty."). In the face of this extraordinary record, the Government's attempts to dismiss these claims as "not substantial" ring hollow.

II.  Mr. Kelsey's Case Presents Exceptional Circumstances Justifying Release.

Both the government and the district court acknowledge that one way Mr. Kelsey can show an exceptional circumstance is by "short sentences for relatively minor crimes so near completion that extraordinary action is essential to make collateral review truly effective." *United States v. Lyons*, 2024 WL 3898550, at *7 (D.D.C. Aug. 22, 2024) (quoting *United States v. Roberts*, 250 F.3d 744 (5th Cir. 2001)). But the district court abused its discretion by not applying this standard to Mr. Kelsey's case. Neither the district court nor the government define what a "short sentence" is that would prevent Mr. Kelsey from having satisfied this prong.

In other contexts, this Court and others have defined a "short sentence" as exactly the same as Mr. Kelsey's 21-month sentence. *See Fauntleroy v. Patton,* 2007 WL 1100202, at *4 (E.D. Ky. Apr. 11, 2007) (recognizing 21-month sentence as "short"); *United States v. Soto*, 189 F. App'x 470, 470 (6th Cir. July 20, 2006) (24 months); *United States v. Berry*, 911 F.3d 354, 366 (6th Cir. 2018) (five-year sentence for nonviolent offense treated as "relatively short").

10

Mr. Kelsey's sentence becomes even shorter when considering his eligibility for reductions under the First Step Act. As a nonviolent, first-time offender, Mr. Kelsey's projected conditional release date is just ten months after beginning his term of imprisonment—placing his release around December 24, 2025. If relief is ultimately granted, but only after serving the bulk of his sentence, the victory will be meaningless. *See, e.g., Denney v. United States*, 2010 WL 11627531, at *5 (N.D. Ga. Feb. 5, 2010) ("Given the short time frame between now and Movant's completion of his sentence [approximately 15 months], this Court finds that exceptional circumstances exist to warrant his release on bond until the resolution of this § 2255 motion by a final order.").

## CONCLUSION

Mr. Kelsey's case presents the rare confluence of factors warranting release pending resolution of his § 2255 motion: (1) a short sentence that will soon expire, (2) newly discovered exculpatory evidence that was suppressed pre-plea, (3) serious unresolved questions of law regarding *Brady* and campaign coordination, and (4) a pattern of ineffective assistance infecting the entire proceeding. This Court should reverse the district court's order and grant Mr. Kelsey's motion for release.

Respectfully submitted,

*/s/ Kent Wicker*
Kent Wicker
WICKER / BRAMMELL, PLLC
323 W. Main Street, 11th Fl.
Louisville, Kentucky 40202
Telephone: (502) 780-6185
kent@wickerbrammell.com

*Counsel for Appellant Brian Kelsey*

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

I hereby certify that, excluding the parts of the Brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Sixth Circuit Rule 32(b)(1), this brief contains 2,451 words.

I further certify that this Brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) - (6). This Brief has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font.

*/s/ Kent Wicker.*
Kent Wicker

## **CERTIFICATE OF SERVICE**

It is hereby certified that a true and accurate copy of the foregoing was electronically filed with the Court on this 7th day of March, 2025, which will electronically notify all counsel of record.

*/s/ Kent Wicker*
Kent Wicker